(Decided June 28th, 1898).

---

# MARY REILLY AND JOHN BRADFORD *vs.* THE UNION PROTESTANT INFIRMARY AND THE TRUSTEES OF THE PRESBYTERY OF BALTIMORE.

*Devise and Legacy—Misnomer of Corporation in a Bequest—Legatee Intended to Take—Acceptance of Charter.*

A misnomer of a corporation in a devise or bequest will not operate to defeat the same, when it is made to appear what particular corporation was designed to take by the testator.

A testatrix bequeathed a sum of money to the "Presbyterian Infirmary on Division street, in Baltimore City " There was no institution of that name, but there was an hospital called "The Union Protestant Infirmary," which was situated on Division street, and this was the only hospital or infirmary on that street. The testatrix had been an active member of the Presbyterian Church and much interested in the religious and benevolent societies affiliated with that church. Many of the officers of the Union Protestant Infirmary were members of the Presbyterian Church. *Held*, that the testatrix intended that the Union Protestant Infirmary should take the legacy, and that it was entitled to the same, notwithstanding the misnomer.

The same testatrix also gave a legacy to the "Home Mission of the Presbyterian Church of Baltimore " There was no corporation ot that name, but there was one called "The Trustees of the Presbytery of Baltimore," whose most prominent committee was designated as the "Committee of the Home Mission of the Presbytery of Baltimore ; " and the corporation itself was generally known as the "Home Mission." There was no other Home Mission of the Presbyterian Church in Baltimore. *Held*, that the corporation, "The Trustees of the Presbytery of Baltimore," is entitled to the legacy."

Where a defendant is alleged in the bill to be a body corporate, and has answered as such under its seal, and its legal existence has been recognized by an Act of Assembly, it cannot be objected on appeal for the first time that the charter of the defendant is not shown to have been accepted.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, ROBERTS and PEARCE, JJ. (April 27 and 28, 1898).

*Edwin Higgins* and *Richard M. Duvall,* for the appellants.

*Joseph Packard, Jr.,* for the Union Protestant Infirmary, appellee.

*John L. G. Lee* (with whom was *E. J. D. Cross* on the brief), for the Trustees of the Presbytery of Baltimore, appellee.

McSHERRY, C. J., delivered the opinion of the Court.

By the second clause of her last will and testament Mary Long bequeathed to the " Presbyterian Infirmary on Division street in Baltimore City " the sum of five hundred dollars ; and by the fourth, or residuary clause, she gave the rest and residue of her estate to " The Central Presbyterian Church (Eutaw street), and the Home Mission of the Presbyterian Church of Baltimore, to be divided equally between them, share and share alike. " The next of kin of the testatrix claim that the gifts to the Presbyterian Infirmary on Division street and to the Home Mission of the Presbyterian Church are void because there are no such corporations existing as those named in the will. The Union Protestant Infirmary, a body corporate owning and conducting an infirmary on Division street in Baltimore, claims the legacy to the Presbyterian Infirmary on Division street ; and " The Trustees of the Presbytery of Baltimore," a body cor-

porate, claims that it is entitled to receive the share of the residuum given to the Home Mission of the Presbyterian Church of Baltimore. The executor being confronted by these conflicting claims filed a bill in the Circuit Court of Baltimore City against all the parties asserting an interest in the funds, and asked that the Court take jurisdiction of the administration of the estate and construe the will. The several defendants answered the bill. The appellants, the collateral next of kin of the decedent, who left no lineal descendants, relying on the alleged invalidity of the second and fourth clauses of the will, claimed the property therein disposed of; and the appellees, asserting their ability to take the bequests, insisted that the property passed to them under the will. Testimony was taken and upon final hearing a decree was entered sustaining the contention of the appellees. From that decree the next of kin have appealed.

In disposing of the questions involved we do not propose to cite or to rely on parallel or seemingly parallel cases; because, as has often been said by this and other Courts, when the decision is not upon some rule or principle of law, but upon the meaning of descriptive terms in instruments which differ so widely from each other as wills almost invariably do; and when the proper construction of these terms is so varied by the peculiar circumstances of each ·case, it seldom happens, or can happen, that the words of one will are a sure or a safe guide for the construction of words resembling them in another will. The intention of the testator as gathered from the will itself, when the will is read in the light of the circumstances and environment that surrounded its author at the time of its execution, is, in the last analysis and in every instance, the objective point of judicial inquiry. The law will not deny to the reader of an instrument the same light that the writer had. If the testamentary intention is thus made to appear with reasonable certainty, it will prevail, provided, of course, the language employed and actually written, is, when interpreted from the standpoint which the testator occupied at the time

of using it, sufficiently intelligible and apt ; and provided
no principle of law or settled rule of property be invaded by
giving effect to the intent when so ascertained.

The testatrix was at the time of her death, and for many
years previously had been a contributing and an active mem-
ber of the Central Presbyterian Church of Baltimore., She
was evidently intensely interested in the various auxiliary
religious and benevolent bodies affiliated with, or which she
thought were affiliated with, her faith.   Of. the seven be-
quests contained in her will five are for religious or benevo-
lent purposes.   The first of these five is to the Presbyterian
Infirmary on Division street in Baltimore.   There *is* an In-
firmary on Division street and the record shows there is but
*one.*   That the testatrix intended to give to *an* Infirmary on
Division street a legacy of five hundred dollars is as clear
from the terms of the will as language can convey.   As
there is but *one* Infirmary on that street it is equally clear
she intended *that one* to be the beneficiary.   But the next
of kin assert, and it is conceded, that the corporate name of
the institution on Division street is not the Presbyterian In-
firmary, but the Union Protestant Infirmary ; and the ques-
tion is can the latter take the bequest under the designation
contained in the will ?   This is simply a question as to the
*identity* of the legatee.   At the outset it is obvious that the
testatrix did not intend the appellants to have her estate,
and if they succeed in getting it it will be in spite of her
effort to give it to others.   Her manifest intention was, *not*
to give that estate to her next of kin.   We start, then, with
the postulate that the testatrix did *not* intend the appellants
to have the funds they now claim, and that she *did* intend
that others should receive them.   If the testatrix intended
that the body corporate claiming the bequest—the Union
Protestant Infirmary—was the one to receive it ; and if that
intention sufficiently appears by the will when we place
ourselves as nearly as may be in the situation which she
occupied ; then, no matter how inaccurately she may have
*named* the object of her bounty, the real legatee will take.

" A misnomer in a grant by statute or by devise, to a corporation, does not avoid the grant, though the right name of the corporation be not used, provided the corporation really intended be made apparent." 2 *Kent. Com.* 292.  " In a devise to a corporation, if the words (though the name be entirely mistaken) show, that the testator could only mean a particular corporation, it is sufficient." *Vansant* v. *Roberts*, 3 Md. 128.   The name is simply descriptive of the legatee. The *name* is no more the legatee than is the name of an individual the individual himself.   The *Infirmary* on Division street was obviously intended to be the beneficiary ; and whether it be called Union Protestant or Presbyterian is wholly immaterial if it be apparent that it—the Infirmary whatever its name—was meant by the language used.   Since eighteen hundred and fifty-nine the Union Protestant Infirmary has been located on Division street ; there is no other hospital or Infirmary situated on that street ; and many of the leading officers and managers of the institution have been prominent members of the Presbyterian Church.

Assuming that Miss Long intended to give five hundred dollars to an Infirmary on Division street, as her will unequivocally declares, it is perfectly manifest that she could have designed no other than the body corporate now claiming the legacy ; because there never has been and is not now any other institution of that character situated on that street that could possibly set up a claim to the legacy ; and there is no other corporation making a pretense that it is entitled to it.   The use of the wrong adjective in describing *that* Infirmary does not indicate that she did not mean *it ;* or that she *did* mean one which had no existence at all. Unless the bare misnomer of a legatee is sufficient to defeat a legacy, there is no possible ground upon which the right of the Union Protestant Infirmary to take this bequest can be denied.   The decree of the Court below in this particular was, therefore, clearly right.

Much that has been already said is also applicable to the other provision of the will respecting the bequest to the

Home Mission of the Presbyterian Church of Baltimore. There is no body corporate of that name, but there is a corporation chartered by the General Assembly of Maryland under the Act of 1890, ch. 84, and called "The Trustees of the Presbytery of Baltimore." The will is very carelessly and inaccurately drawn. Not one of the five religious and benevolent legatees is correctly named. Whilst there is no such body corporate as the Home Mission, "the Committee of the Home Mission of the Presbytery of Baltimore" is the best known, most active and widely useful auxiliary of "the Trustees of the Presbytery of Baltimore." The body corporate performs its functions through the agency of its committees, and as the committee of the Home Mission is not only the best known, but the most active, its name has, very naturally, become more familiar to many of the members of the Presbyterian Church than the name of the body corporate itself. And thus, most probably, the name of the committee by and through which the chief functions of the body corporate are directed and executed, has gradually grown into use as descriptive of the corporation. Amongst the objects for which the Trustees of the Presbytery were incorporated are those which this committee of the Home Mission has in charge ; and there was nothing more natural than that an humble and devout but unlettered member of the church, whilst meaning to confer her bounty on the corporation created to hold and expend the means with which the duties pertaining to the Home Mission, were to be made fruitful, should inadvertently confuse the corporate name with the name of the subordinate and unincorporated agency entrusted with the active work of the Mission itself. There is no other Home Mission of the Presbyterian Church of Baltimore, than that which performs some of the more important functions of the Trustees of the Presbytery ; and there is no other body corporate making claim to the fund but the latter. We cannot doubt, in the light of the facts before us, that this testatrix designed to make the body corporate charged with the performance of the duties wrought

by the Home Mission Committee, one of her residuary legatees. She has misdescribed the legatee as in the case of the Infirmary. That misdescription will no more defeat her benevolent purpose in this instance than in the other; because in each her intention is perfectly obvious and apparent. That intention if given effect will violate no canon of law or rule of property and will permit her estate to pass to those whom she unequivocally, though inaccurately, described as her legatees, instead of allowing it to devolve on the persons that she manifestly did not intend to be its recipients. As illustrating this line of reasoning we refer to *Gil-mer* v. *Stone*, 120 U. S. 586.

It has been objected that the Trustees of the Presbytery are not entitled to the legacy because it has not been shown that the charter was accepted. It is only necessary to say in reply to this, that the corporation is alleged in the bill to be a body corporate; it has answered under its seal as a body corporate, and the General Assembly of the State, by the Act of 1898, ch. 85, in sanctioning this particular bequest has specifically and by name recognized its legal existence. No such defence was made by the answer of the appellants and the question is not open to contention on this appeal.

As we entirely agree with the conclusion reached by the Court below we shall affirm the decree.

> *Decree affirmed, costs above and below to be paid out of the estate.*

(Decided June 28th, 1898).